To the Honorable Members of
the Senate of Alabama
State Capitol
*549 Montgomery, Alabama
Gentlemen:
We are in receipt of Senate Resolution 13, received November 10, 1981. It requests our opinion as to questions posed regarding the constitutionality of Senate Bill 46, which is as follows:
“A BILL
“TO BE ENTITLED
“AN ACT
“To appropriate six million five hundred thousand dollars ($6,500,000) from the general fund of the State, for the fiscal year ending September 30,1982, for the purpose of paying costs incurred by the State in providing services to the Alabama Housing Finance Authority in connection with the issuance of bonds by said authority prior to January 1, 1982, and to provide that the moneys so appropriated shall be certain moneys derived by the State from the leasing of rights to explore and drill for or to produce oil, gas and other hydrocarbon minerals in any area on the water side of the high water mark of Mobile Bay or in any other offshore area.
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. Legislative Findings and Declarations. The Legislature hereby finds and declares:
“(a) that there is a critical shortage of funds available for the financing of mortgage loans secured by single and multifamily residential property located in the State;
“(b) that the Legislature in Act No. 80-585 enacted at the 1980 Regular Session of the Legislature authorized the creation of the Alabama Housing Finance Authority and empowered said authority to issue its bonds for the purpose of making funds available in the State for mortgage loans secured by mortgages on single and multi-family residential property at interest rates sufficiently low to facilitate the financing of safe and sanitary housing units for citizens of this State with low or moderate incomes;
“(c) that, under present federal law, the interest income on bonds issued by the Alabama Housing Finance Authority prior to January 1, 1982, in a principal amount not exceeding $200,000,000 shall be exempt from federal income taxation;
“(d) That, because of changes in federal law enacted since the creation of the Alabama Housing Finance Authority, it will be necessary for the State to make available to said authority professional and other services and bond insurance in order to enable said authority to issue and sell its bonds;
“(e) that the State received certain advance rentals after January 1, 1981, and before May 21, 1981, from the leasing of rights to explore and drill for or to produce oil, gas and other hydrocarbon minerals in certain areas of Mobile Bay and other offshore areas and that the moneys so received are presently held in the general fund of the State; and
“(f) that a portion of the aforesaid advance rentals and the income from the investment thereof should be expended by the State to enable the Alabama Housing Finance Authority to issue its bonds in a principal amount not exceeding $200,000,000 prior to January 1, 1982, and to otherwise perform the functions for which it was organized.
“Section 2. Appropriation. The sum of six million five hundred thousand dollars ($6,500,000), or so much thereof as may become available for the purposes described herein, is hereby appropriated from the general fund of the State (the moneys subject to such appropriation to be determined in accordance with the provisions of Section 3 of this Act) for the fiscal year of the State ending September 30, 1982, for the purpose of paying costs incurred by the State in providing services to the Alabama Housing Finance Authority to enable said authority to issue *550 its bonds subsequent to the effective date of this Act and prior to January 1, 1982. The fees, expenses and other costs which may be paid with the moneys so appropriated shall include, but shall not be limited to, (i) fees charged by lending institutions and other financial institutions for services provided in connection with the financing of certain mortgages, including, but without limitation thereto, fees for placing, servicing and administering mortgages and trust funds, fees for acting as paying agent, and fees and charges for providing commitments to refinance mortgage loans initially' financed with proceeds from the sale of bonds of the Alabama Housing Finance Authority, (ii) charges of rating agencies and printing expenses, (iii) underwriting, accounting, legal and administrative expenses, (iv) costs of insurance and performance bonds, (v) fees and charges for feasibility and mortgage market studies and (vi) other costs of issuance of bonds of the Alabama Housing Finance Authority and costs of other services provided by the State to said authority.
“Section 3. Source of Appropriation. For the purpose of the appropriation made in this Act, the advance rentals received by the State at any time after January 1,1981, and before May 21,1981, from the leasing of rights to explore and drill for or to produce oil, gas or other hydrocarbon minerals in any area on the water side of the high water mark of Mobile Bay or in any other offshore area and the income from the investment and reinvestment of such moneys (including income from the investment and reinvestment of previously derived income) shall be considered as a separate fund within the general fund of the State. The moneys appropriated herein shall consist of moneys in the said separate fund, to the extent that such moneys are available for such appropriation. Any provision of law requiring the transfer of the moneys in the said separate fund from the general fund of the State to a permanent trust fund to the contrary notwithstanding, the moneys in the said separate fund which are herein appropriated shall be held apart from such permanent trust fund and not included with the moneys transferred thereto. If for any reason moneys in the aforesaid separate fund are not available for the appropriation made in this Act, the moneys so appropriated shall come from the general fund of the State.
“Section 4. Disbursement of Appropriated Moneys. The moneys herein appropriated shall be disbursed only upon the delivery to the State Comptroller of requisitions signed by the chairman of the board of directors of the Alabama Housing Finance Authority and the Governor. Each such requisition must state the fees, charges and other expenses to be paid pursuant thereto, the persons, firms and corporations to whom such fees, charges and other expenses are owed and the amount payable to each of such persons, firms and corporations. Upon the receipt of a requisition containing such information and signed as aforesaid, the State Comptroller shall draw warrants in such amounts and payable to such persons, firms and corporations as shall be necessary to provide for the payment of all the fees, charges and other expenses described in such requisition.
“Section 5. Termination of Appropriation. If no bonds are issued by the Alabama Housing Finance Authority prior to January 1, 1982, or if, in the event that bonds of said authority are issued prior to said date, the Director of Finance of the State shall determine that, taking into account any moneys which may have been made available to said authority from another source, the disbursement of all of the moneys appropriated herein is not required to enable said authority to issue such bonds, then, in either of such events, the appropriations made herein shall terminate and any moneys subject to such appropriations which have not been disbursed prior to such termination shall remain in the general fund of the State. Any provision of this Act to the contrary notwithstanding, in the event that the moneys considered as a separate *551 fund within the general fund of the State under the terms of Section 3 of this Act shall be transferred by law to a permanent trust fund, then any moneys initially subject to the appropriation made herein which are not disbursed pursuant thereto as the result of the termination of such appropriation shall not be held apart from such permanent trust fund, but shall be included with the moneys transferred thereto.
“Section 6. Severability. The provisions of this Act are severable. If any part of this Act is declared invalid or unconstitutional, such declaration shall not affect the part which remains.
“Section 7. Effective Date. This Act shall become effective immediately upon its passage and approval by the Governor, or upon its otherwise becoming a law.” The first questions posed are:
“(1) Whether the appropriation of the funds by, and the use thereof for the purposes set forth, in Senate Bill No. 46 are invalid under Section 93 of the Constitution of Alabama of 1901, as amended, as authorizing the State (i) to engage in works of internal improvement or to lend money or its credit in aid of such, or (ii) to be interested in any private or corporate enterprise, or (iii) to lend money or its credit to any individual, association or corporation?”
We answer each of these questions in the negative. In Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115 (1966), this Court held, speaking through Justice Merrill, that there are five principle prohibitions in Section 93:
“The State is forbidden (1) to engage in works of internal improvement, (2) to lend money in aid of such, (3) to lend its credit in aid of such, (4) to be interested in any private or corporate enterprise, and (5) to lend money or its credit to any individual, association, or corporation.”
279 Ala. at 209, 184 So.2d 115.
Nothing in Senate Bill 46 violates any of these prohibitions. It does not authorize the State to engage in works of internal improvement, or to lend its money in aid of such, or to lend its credit in aid of such. The fourth prohibition, to be interested in any private or corporate enterprise, has been construed to mean that the State may not engage, alone or in concert with others, in business of a type generally characterized as private enterprise. State ex rel. Wilkinson v. Murphy, 237 Ala. 332, 186 So. 487 (1939). Senate Bill 46 does not authorize the State to engage in any private enterprise. It simply appropriates moneys derived from leases authorizing oil and gas exploration for the purpose of paying costs incurred by the State in providing services to the Alabama Housing Finance Authority, a public corporation. In several cases, this Court has held that Section 93 does not relate to lending either money or credit to a public corporation. Edmonson, supra, which relied upon Rogers v. City of Mobile, 277 Ala. 261, 169 So.2d 282; State ex rel. Austin v. City of Mobile, 248 Ala. 467, 28 So.2d 177; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695.
We conclude that Senate Bill 46 does not violate Section 93 of the Constitution.
The next and final question posed is as follows:
“(2) Will the appropriation of the said funds by, and the use thereof for the purposes stated in, the said Senate Bill No. 46 result in bonds issued by the said Authority with respect to which the appropriation contained in Senate Bill 46 is made being deemed an indebtedness of the State under Section 213 of the Constitution of Alabama of 1901, as amended?”
We answer this question in the negative.
Again, we conclude that Edmonson v. State Industrial Development Authority, supra, is dispositive of this question. There we held that:
“Bonds issued by a public corporation that is a separate entity from the State will not constitute a new debt of the State within the meaning of Section 213, as amended. We have specifically said that bonds issued by public corporations of the State do not fall within the prohi *552 bition of that section of the Constitution. Opinion of the Justices, 264 Ala. 176, 85 So.2d 391; In re Opinion of the Justices, 256 Ala. 170, 54 So.2d 68. And we have held that the bonds of a public corporation do not constitute a debt of the State. Rogers v. Garlington, 234 Ala. 13, 173 So. 372; Scott v. Alabama State Bridge Corp., 233 Ala. 12, 169 So. 273; Alabama State Bridge Corp. v. Smith, 217 Ala. 311, 116 So. 695. To the same effect are our opinions in Opinion of the Justices, 263 Ala. 174, 81 So.2d 699; Opinion of the Justices, 254 Ala. 506, 49 So.2d 175; In re Opinion of the Justices, 225 Ala. 460, 143 So. 900.”
279 Ala. at 210-211, 184 So.2d 115.
Respectfully submitted,
HUGH MADDOX
JAMES H. FAULKNER
RICHARD L. JONES
JANIE L. SHORES
OSCAR W. ADAMS, Jr. Associate Justices.
It is our considered opinion that the provisions of Senate Bill 46 violate § 93 of the Constitution of 1901, as amended. Therefore, we must respectfully disagree with the five justices who opine to the contrary. Section 93 of Article IV, of the Constitution of 1901, as last amended by Amendment No. 58, provides in pertinent part as follows:
The state shall not engage in works of internal improvement, nor lend money or its credit in aid as such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto.
Senate Bill 46 appropriates money directly from the general fund to pay certain operational costs and expenses of the Alabama Housing Finance Authority. The Authority is given broad powers to effectuate its purposes, some of which are set out as follows:
(7) To purchase mortgage loans from mortgage lenders;
(8) To contract with mortgage lenders for the origination of, or the servicing, of mortgage loans to be made by such mortgage lenders and the servicing of the mortgages securing such mortgage loans;
(9) To make loans to mortgage lenders, provided that (i) the proceeds of such loans shall be required to be used by such mortgage lenders for the making of mortgage loans, and (ii) the mortgages in connection with the mortgage loans so made, together with any additional security required by the authority, shall be mortgaged, pledged, assigned or otherwise provided as security for such loans to mortgage lenders;
(10) To exercise any and all rights accorded to the owner and holder of a mortgage under and in accordance with the terms of said instruments and the applicable laws of the state with respect to the mortgaged property, directly or through mortgage lenders or others acting on behalf of the authority or on behalf of the holder of its bonds, including, but without limitation, the power to foreclose, to sell the equity of redemption, to purchase the equity of redemption and otherwise sell and dispose of the mortgaged property, all as shall seem in the best interests of the authority and the holders of its bonds;
(11) To sell and issue bonds in order to provide funds for any corporate function, use or purpose ....
Code 1975, § 24-1A-5 (Act 80-585, approved May 28, 1980).
There are five principal prohibitions in § 93. The State is forbidden: (1) to engage in works of internal improvement, (2) to lend money in aid of internal improvement, (3) to lend its credit in aid of internal improvement, (4) to be interested in any private or corporate enterprise; and (5) to lend money or its credit to any individual, *553 association, or corporation. Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115 (1966). In Edmonson, the Court stated that the prohibition contained in § 93 that the State can not be interested in any private or corporate enterprise has been construed to mean that the State may not engage, alone or in concert with others, in business of a type generally characterized as private enterprise. Although Edmonson involved the creation of the State Industrial Authority and the source of funds to pay off the bonds issued by the Authority, the Court held: “No part of the taxes presently paid into the general fund of the State can be used to service the bonds authorized to be issued by the Authority” (emphasis added).
Section 2 of Senate Bill 46 specifically provides for an appropriation from the general fund of the state to aid the Housing Finance Authority in the issuance of bonds. Even though the oil lease money is intended to be kept separate from the general fund, it is still general fund money. This bill further provides that should the money from the oil leases that is in the general fund, not be sufficient or available for this appropriation, then additional general fund money can be used without limitation.
It takes no citation of authority to reach the conclusion that engaging in the money lending business and taking a mortgage as security, is clearly private enterprise. As such, it has not been a function of our state government since 1901. Indeed, it was the unfortunate experience of our state when it was engaged in the business of banking that prompted the inclusion of § 93 into our Constitution of 1901.
State v. Murphy, 237 Ala. 332, 186 So. 487 (1939), best states our view as follows:
Defendant further argues that the words, “nor shall the state be interested in any private * * * enterprise,” mean merely that the State shall not be interested with individuals, associations or corporations in the operation of a private or corporate enterprise, and was not intended to prevent the State itself from engaging in a private enterprise.
But we think this too narrow a construction of the Constitution, and clearly out of harmony with the motivating cause of the inclusion of this prohibition in our organic law. The interest referred to is a pecuniary interest in any private or corporate enterprise, and this prohibition was, we think inserted in our organic law as a limitation upon the power of the legislature to again place our State in business enterprises and in competition with private individuals or corporations; or to undertake those things which ordinarily might, in human experience, be expected to be undertaken for profit or benefit to private promoters.
237 Ala. at 335, 186 So. 487.
Attorneys representing the Alabama Housing Finance Authority have filed an amicus curiae brief, and at the request of the Court, the Attorney General also filed a brief. Both briefs support the position of the five justices who are of the opinion that the pertinent provisions of Senate Bill 46 violate neither § 93 of the Constitution, as amended, nor § 213 of the Constitution. As to § 93, both briefs and the five justices place great weight upon the proposition that since the Alabama Housing Finance Authority is a separate public corporation the limitations and restrictions of § 93 do not apply; that is, a separate public corporation is not the state. While we recognize statements to this effect in our cases and in some previous Opinions of the Justices, this proposition of law is of great concern to us and simply cannot be a controlling principal of Alabama constitutional law.
For this proposition to stand unchallenged, there remains no constitutional limitation upon our lawmakers to establish separate “public corporations” to engage in any private enterprise or business (e.g., banking, farming, manufacturing, or merchandising) and then appropriate public funds to pay the operational expenses therefor — all in direct competition with individual or private corporate organizations engaged in such business activities. While we may have permitted the state to engage in and regulate the sale and distribution of *554 alcoholic beverages under its police power, State v. Murphy, 237 Ala. 332, 186 So. 487; and finance the preparation of industrial sites for industry by grants to local public authorities, Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115; this Court should never give its approval (absent constitutional authorization [1]) to finance from public funds the operational expenses of lenders of money. While it may be popular and good at the present time to come to the aid of our ailing housing industry and supporting lending institutions, the opinion of the majority of this Court today nevertheless sets a precedent which would permit future legislatures to obligate our taxpayers to compete with any private enterprise when economic conditions are unfavorable.
As was stated by the Kansas Supreme Court in State v. Kelly, 71 Kan. 811, 81 P. 450 (1905) and adopted by this Court in Opinion of the Justices, No. 52, 237 Ala. 429, 187 So. 244 (1939):
It has been the policy of our government to exalt the individual rather than the state. * * * Our Constitution was framed and our laws enacted with the idea of protecting, encouraging, and developing individual enterprise.
Respectfully submitted,
C. C. TORBERT, Jr. Chief Justice.
RENEAU P. ALMON Associate Justice.

. Both the amicus curiae and the Attorney General inform us in brief that there is also pending before the legislature Senate Bill 41 which proposes a constitutional amendment to authorize the appropriation of public funds for the purposes enumerated in Senate Bill 46. Obviously, some members of the legislature or others were of the opinion that formal constitutional sanction was necessary to authorize the proposed expenditure of these public funds. To like affect, it is significant to observe the various amendments to § 93 authorizing the construction and developments of public roads, bridges and highways, harbors and seaports, and public airports. See Amendments No. 1 and 12 to said § 93.