The defendants appeal from an adverse judgment rejecting their constitutional challenge to a proposed public bond issue. We affirm. *Page 1266 
The Tennessee Valley Exhibit Commission of Alabama ("Commission") is a public corporation created by the Alabama Legislature in 1984. (Ala. Acts 1984, No. 84-292; now codified at Alabama Code 1975, § 41-9-780 et seq.) The Governor appoints one representative from each of sixteen Alabama counties, who make up the membership of the Commision.
The Commission was created, primarily, to establish and maintain an information and exhibit center in order to provide the public with information on energy-related technology, river development, and the accomplishments of the TVA. In furtherance of its purpose, the Commission now proposes to build an exhibit center and observation tower ("Project") in Florence, Alabama.
In 1986, the legislature amended the 1984 Act to authorize the Commission to issue revenue obligations payable, in part, from "payments in lieu of taxes" made by the TVA to the State of Alabama.[1] Therefore, the proposed Project is to be financed by the issuance of approximately $3.5 million of Commission bonds, payable from the revenues of the Project and, if the revenues from the Project are insufficient, from a portion of TVA's in-lieu-of-taxes payments to the state.
The meaning of the language of the 1986 amendment was not clear, in that, although it appeared that the legislature intended to make available moneys retained by the state from the TVA payments for payment of debt service on Commission obligations, there was no express appropriation and pledge of such moneys for that purpose. The legislature amended the statute in 1987 to cure this ambiguity by appropriating and pledging a portion of the TVA payments to the payment of the principal and interest on up to $3.5 million of the Commission's revenue bonds. The terms and conditions upon which the appropriation is to be made are also set out in the statute. See Act No. 87-586, Ala. Acts 1987.
In connection with the planned construction of the Project, the Commission has retained accountants, engineers, and lawyers to begin the preliminary work. In order to finance the costs of constructing the Project, the Commission proposes to issue and sell revenue obligations as authorized by the statute, as amended. The issuance and sale, however, are contingent upon the Commission's receiving approval in the form of a legal opinion of its bond counsel.
The plaintiff, Betty Muse Ruth, is a member of the Commission and wants the Commission to proceed with its proposed revenue bond issue in order to finance the construction of the Project. The defendants, George McBurney and Edward F. Mauldin, are the chairman and vice chairman, respectively, of the commission; they have advised Mrs. Ruth that they can not proceed with the issuance of the bonds without a determination of the legal status of such bonds, if issued. Mrs. Ruth filed a declaratory judgment action to determine whether the Commission's proposed revenue bonds would create a new debt of the State of Alabama. In other words, if the bonds were issued, would the use of the TVA payment moneys to pay the principal and interest on the revenue bonds constitute an indebtedness of the state in violation *Page 1267 
of §§ 93[2] and 213[3] of the state constitution?
The trial court decreed that the payment of the principal and interest on any revenue bonds issued by the Commission with revenues retained by the state from TVA payments wouldnot create a new indebtedness of the state for constitutional purposes. The defendants appeal.
The defendants maintain that while they want the Commission to issue the revenue bonds, "it would be imprudent to proceed with the issuance of such bonds without an authoritative determination respecting their legal status." It is especially important, argue the defendants, to study the possible use of the "in lieu of taxes" payments to the state in the context of Alabama law:
 "It has been held that when the State pledges income from an existing facility to repay borrowed money, 'there is then a pledge of something the State already has; a part of the credit of the State.' Opinion of the Justices, 266 Ala. 78, 93 So.2d 923 (1957). If, on the other hand, the State pledges revenue from a source it did not possess before, such action does not divert funds or property which could have been used for other purposes."
Opinion of the Justices No. 243, 356 So.2d 1193, 1194 (Ala. 1978).
The defendants concede that Opinion of the Justices No. 243
dealt with operating revenues from facilities owned by subdivisions of the state, rather than with the TVA in-lieu-of-taxes payments, which are mandated by Congress. However, say the defendants, the above-quoted language "raises doubt or uncertainty. . . as to the proposition that the proposed [Project] bonds would not constitute a debt of the state."
The plaintiff argues that the decisions of this Court support her contention that the proposed revenue bonds of the Commission would not constitute an indebtedness of the state. We agree.
Opinion of the Justices No. 286, 407 So.2d 548 (Ala. 1981), concerned the constitutionality of proposed legislation that would appropriate $6,500,000 from the general fund of the State to pay costs incurred by the State in providing services to the Alabama Housing Finance Authority (a public corporation) in connection with the Authority's issuing of bonds. The proposed act further provided, however, that the moneys so appropriated would only be those funds derived from the leasing of offshore oil and gas rights. The Court held that this appropriation was constitutional and that it did not create a new debt of the state.
Of particular application to the facts of the instant case was this holding:
 "[The legislation at issue here] does not authorize the State to engage in any private enterprise. It simply authorizes moneys derived from leases authorizing oil and gas exploration for the purpose of paying costs incurred by the State in providing services to the Alabama Housing Finance Authority, a public corporation. In several cases, this Court has held that Section 93 does not relate to lending either money or credit to a public corporation."
Opinion of the Justices No. 286, 407 So.2d at 551. (Citations omitted.) *Page 1268 
In Thomas v. Alabama Municipal Elec. Authority, 432 So.2d 470
(Ala. 1983), the Court considered an appeal "from a decree. . . which [, among other things,] validated and confirmed certain evidences of indebtedness proposed to be issued by the Alabama Municipal Electric Authority." In answering the 12 issues raised by the appellant, the Court addressed the last two questions as follows:
 "(11) Does the Act violate Sections 93 and 94 of the Alabama Constitution?
 "Sections 93 and 94, Const. of Ala., 1901, were designed to prevent the expenditure of public funds in aid of private individuals and corporations by reason of which a pecuniary liability is incurred. A public corporation is a separate entity from the State and from any local political subdivision thereof. The prohibitions of Sections 93 and 94 are directed to the State and not to public corporations. [Citations omitted.] Therefore, the Act does not violate §§ 93 and 94.
 "(12) Do the Notes' [issued by the Authority] constitute debts of the State in violation of Section 213 of the Alabama Constitution as amended by Amendment No. 26?
 "Section 213, as amended, provides that no new debt may be created by the State. This court has held time and again that public corporations are entities separate and distinct from the State and the bonds and other debts of those corporations are not debts of the State within the meaning of Section 213, as amended. [Citations omitted.] The Authority's debts are not debts of the State; the Authority is not empowered to borrow moneys from the State for the purpose of financing any operations or activities. Therefore, the Notes do not constitute debts of the State in violation of Section 213 of the Alabama Constitution as amended."
Thomas v. Alabama Municipal Elec. Authority, 432 So.2d at 481.
Similarly, the Commission's proposed bond issue in the instant case is to be funded, but funded only if necessary, with moneys derived from the TVA's payment for the right to operate in the counties represented by the Commission and which, by federal and state law, are to be divided among the state and the counties represented by the membership of the Commission. According to the holding in Opinion of the JusticesNo. 286, supra, and in Thomas v. Alabama Municipal Elec.Authority, supra, the use of the TVA moneys to make up revenue insufficiencies in order to service the bonds issued by the Commission, a public corporation, would not be an engagement by the State in works of internal improvement, or a lending of state money or credit in aid of such improvement, or the taking of an interest in a private corporate enterprise, or a lending of state money or credit in aid of such an enterprise.
Additionally, as both of the foregoing cases make clear, under Alabama law a public corporation is an entity separate from the state and its acts are not "acts of the state" within the prohibitive provisions of § 213 of the state constitution. Therefore, bonds such as those proposed to be issued by the Commission do not constitute a "new debt" of the state within the meaning of § 213. Opinion of the Justices No. 286, supra, and Curtis v. Alabama Elk River Development Agency, Inc.,372 So.2d 353 (Ala.Civ.App. 1979).
Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115 (1966), dealt with a taxpayers' suit against the authority seeking to invalidate an act creating a public corporation for the promotion of industrial development. This Court held that the bonds issued by the authority did not
constitute a new debt of the state in violation of § 93 or § 213 of the state constitution. Instead, the Edmonson court held:
 "Bonds issued by a public corporation that is a separate entity from the State will not constitute a new debt of the State within the meaning of Section 213, as amended. We have specifically said that bonds issued by public corporations of the State do not fall within the prohibition of the Constitution. [Citations omitted.] And we have held that the bonds *Page 1269 
of a public corporation do not constitute a debt of the State. [Citations omitted.]
 "We now consider whether the appropriation and pledge in the act for servicing the bonds creates a new debt under Section 213, as amended. We hold that they do not under the authority of Rogers v. Garlington, 234 Ala. 13, 173 So. 372 [(1937)]; Opinion of the Justices, 275 Ala. 254, 154 So.2d 12
[(1963)]; Opinion of the Justices, 270 Ala. 147, 116 So.2d 588 [(1959)]. In Rogers v. Garlington, supra, there was an appropriation and pledge of the state gasoline tax to pay bonds of the Alabama Bridge Authority; in the opinion in 275 Ala. 254, 154 So.2d 12, the appropriation and pledge were for bonds issued by the Alabama Trade School and Junior College Authority; and in the opinion [at] 270 Ala. 147, 116 So.2d 588, the pledge and appropriation were for bonds issued by the Alabama Education Authority. In each of the statutes under consideration there, and Act No. 662 here, there were striking and substantial similarities as listed below:
 "(1) Each provides that the bonds authorized to be issued thereunder shall not be general obligations of the issuing body but shall be payable solely out of the funds appropriated and pledged under the provisions of the applicable act;
 "(2) Each provides that the bonds authorized to be issued thereunder shall not constitute or create an obligation of the State of Alabama;
 "(3) Each appropriates and pledges for the accomplishment of the purposes thereof so much as may be necessary of receipts of an excise tax of the State of Alabama;
 "(4) In none of the statutes was there any representation or agreement of any kind that there would ever be any receipts from the tax pledged or that the receipts, if any, would be sufficient to service the bonds;
 "(5) In none of the statutes was there either a pledge of the faith and credit of the State or an agreement to pay the appropriation from any other funds if those appropriated should be insufficient to service the bonds;
 "(6) Each of the statutes authorized the use of proceeds of the bonds issued thereunder for a purpose of state-wide interest;
 "(7) Each of the statutes appropriated and pledged for the servicing of the bonds the receipts of a special tax which had not theretofore been paid into the general fund of the State.
 "We find no violation of either Sections 93 or 213, as amended, of our Constitution."
Edmonson, supra, 279 Ala. at 210-11, 184 So.2d at 119-20.
The bonds proposed to be issued by the Commission, when analyzed according to the "standard" set out inEdmonson, do not create a new debt of the state and are not
prohibited by the state constitution: By statute (§ 41-9-780 et seq.) the proposed bonds are payable from revenues of the Project, the TVA "in lieu of taxes" payments being used only if the revenues are insufficient to pay the bond obligations; the legislation creating the Commission and authorizing the issuance of the bonds states specifically that the bonds will not be obligations of the state; the authorizing legislation limits the appropriation and pledge of non-Commission moneys to the TVA "in lieu of taxes" payments; and the authorizing legislation specifically states that the Commission's bonds shall not create a pledge of the faith and credit of the state and prohibits the appropriating of any state funds except the TVA payments. Further, the proposed Project is clearly a "purpose" of state-wide interest; and general fund tax revenues are not pledged for the payment of the proposed bonds, because the TVA payments are made pursuant to federal law and are not proceeds of any tax levied by the state (i.e., the authorizing legislation does not require the state at any time to levy or collect a tax in connection with the Commission's proposed bond issue).
We hold that the law in Alabama, as announced inEdmonson, supra; Opinion of the Justices No. 286, supra; andThomas *Page 1270 v. Alabama Municipal Elec. Authority, supra; supports the trial court's finding that the proposed bond issue of the Tennessee Valley Exhibit Commission of Alabama does not violate the provisions of the Constitution of the State of Alabama. The judgment appealed from is affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, ALMON, SHORES, BEATTY and ADAMS, JJ., concur.
[1] The TVA makes certain payments in lieu of taxes to those states in which it conducts its power operations. 16 U.S.C. § 831-1. The in-lieu-of-taxes payments made to Alabama are divided among the state and various counties pursuant to §40-28-2. In 1986, total TVA payments to Alabama exceeded $45 million, of which approximately $9 million was retained by the state and deposited into the general fund.
[2] Ala. Const. 1901, § 93, as amended by Amendment No. 58, states: "The state shall not engage in works of internal improvement, nor lend money or its credit in aid [of] such, except as may be authorized by the Constitution of Alabama or amendments thereto; nor shall the state be interested in any private or corporate enterprise, or lend money or its credit to any individual, association, or corporation, except as may be expressly authorized by the Constitution of Alabama, or amendments thereto. . . ." (We note that in § 93, the word was "of"; and in Amendment 58, the word had been "as".)
[3] Ala. Const. 1901, § 213, as amended by Amendment No. 26, states that "[a]fter the ratification of this Constitution, no new debt shall be created against, or incurred by the state, or its authority except to repel invasion or suppress insurrection, and then only by a concurrence of two-thirds of the members of each house of the legislature. . . ."