41 So.2d 771

## OPINION OF THE JUSTICES.
### No. 99.

Supreme Court of Alabama.
June 29, 1949.

Opinion of the Justices of the Supreme Court in response to questions propounded by the House of Representatives under Code 1940, Tit. 13, § 34, as to validity of House Bill No. 729.

Aubrey M. Cates, Jr., of Montgomery, filed brief, amicus curiae.

By Inzer and Roberts

### HOUSE RESOLUTION NO. 74

WHEREAS, there is now pending before the Legislature of Alabama House Bill No. 729 [1] which would authorize the Director of Industrial Relations and other state officers to lease space in an office building to be constructed for the Alabama State Employment Security Corporation and which bill would further provide for a contingent pledge of the interest and penalties on delinquent unemployment compensation contributions and a contingent pledge of the insurance taxes levied under Article 12, Title 51, 1940 Code as amended to the extent derived from Workmen's Compensation In-

---

1. See Gen.Acts 1949, Act No. 557.

surance both of which pledges shall be void in any fiscal year in which Federal grants or other appropriations pay the lease rentals;

Be It Resolved, by the House of Representatives of Alabama, that the Justices of the Supreme Court of Alabama, or a majority of them, are hereby requested to render to this Body their written opinion, as provided by Section 34, Title 13, 1940 Code, as to whether said Act, a copy of which is attached hereto, violates any section of the Constitution of the State of Alabama and particularly Section 213 as amended of said Constitution.

HOUSE OF REPRESENTATIVES
6–24–49
R.S. ADOPTED
R. T. GOODWYN, JR., Clerk

"A BILL
"TO BE ENTITLED
"AN ACT

"To authorize the Director of Industrial Relations to enter into leases for office space in Montgomery with the Alabama State Employment Security Corporation on such terms as said Corporation shall be empowered to tender for the rental of office or storage space provided said leases shall not constitute debts of the State within the meaning of any constitutional inhibition; to authorize the Director of Industrial Relations to accept grants from the Federal Government for the payment in whole or in part of any rental payments under such leases; to authorize said Director to pay out of interest and penalties of unemployment contributions such rental payments to the extent of any deficiency in any Federal grant or other appropriation for such rental; to pledge, in the event of such deficiency, such interest and penalties to the State Treasurer as trustee for the security holders of the Corporation; to further pledge, in the event of such a deficiency, after application of interest and penalties as aforesaid so much but only so much as is necessary to satisfy said rental payments a portion of the taxes levied under Article 12 of to be only so much of said taxes as are attributable to Workmen's Compensation and Employer's Liability Insurance; to authorize other state officers to enter into like leases to the extent the Department of Industrial Relations does not or cannot take space in said buildings; and to provide that this Act shall be severable.

"Be it Enacted by the Legislature of Alabama:

"Section 1. The Director of Industrial Relations or his successor in office or duties is hereby authorized and directed to enter into leases with the Alabama State Employment Security Corporation upon such terms as said Corporation is authorized to let office and storage space in the office building or related group of buildings in Montgomery which said Corporation is empowered to cause to be constructed under the supervision and direction of the Building Commission of 1945. Any such lease shall be Title 51, 1940 Code as amended said portion for a term not longer than one fiscal year so long as a greater term is, as now, contrarily prohibited by the Constitution. But each such lease shall be automatically renewed if the Legislature appropriates money for the payment of rental or if the Federal Government makes grants available for said rental. This authorization in the Director shall be for the Employment Security Division, the Child Labor Division, the Workmen's Compensation Division and such other functioning units of the Department of Industrial Relations or the successor agencies thereto from time to time as may be located in Montgomery.

"Section 2. Upon the dissolution of the Alabama State Employment Security Corporation the space in said building shall be permanently assigned, free of 'shelter' rent, to the Department of Industrial Relations to the extent that the appropriations or Federal grants thereto have enabled the Corporation to amortize and pay the interest on its indebtedness to finance said building. It is the intent of this Section to show the good faith of the Legislature and to encourage the assistance of the Federal Government.

"Section 3. If the Legislature in any fiscal year fails to make any necessary appropriations and if any Federal grant shall be insufficient to pay the rental for said building, then there shall be diverted from the clearing account of the Unemployment Compensation Fund such amount repre-

sented by interest or penalties or both on delinquent unemployment compensations (over and above any pending refund claims for interest or penalties) as shall be necessary to make up any rental deficiency; said diversion to be made upon notice by the State Treasurer to the Director of Industrial Relations. This authorization shall constitute a contingent continuing appropriation without lapse or proration as an inducement to the holders of the Corporation's securities so as to reduce the interest payable thereon and consequently to reduce pro tanto the rental hereby authorized.

"Section 4. After the diversion authorized in Section 3, should there still be a deficiency in said rental then there is, to the extent of any such further deficiency but only to that extent, also thus appropriated in like manner and terms and upon like pledges and covenants, such amounts of the taxes levied under Article 12 of Title 51, 1940 Code as amended, as are derived from premiums on Workmen's Compensation and Employer's Liability insurance, it being recognized that the Department of Industrial Relations has as to its functions with the exception of the Employment Security Division had no earmarked continuing appropriations.

"Section 5. To the extent that the Department of Industrial Relations does not or cannot take space in said building, other state officers needing space and having funds available shall enter into such leases all as in the act creating said Corporation provided.

"Section 6. Should any provision of this Act or the application thereof to any circumstance be held invalid, such invalidity shall extend only to such provision or application and shall not affect the validity of any other provision or the applicability to other circumstances.

"Section 7. This Act shall take effect upon its passage and approval by the Governor or upon its otherwise becoming law."

To the House of Representatives

State Capitol

Montgomery, Alabama

Dear Sirs:

In response to House Resolution No. 74 with respect to House Bill No. 729, we wish to say:

We assume that said House Bill 729 in referring to Alabama State Employment Security Corporation means the corporation proposed to be set up by House Bill No. 720, about which we are asked for an opinion by House Resolution No. 71, and with it in view our opinion will be based.

We do not think section 1 or 2 of House Bill 729 will violate section 213 of the Constitution for the reasons given in our answer to House Resolution No. 71 as to House Bill 720, supra, where our views are fully expressed in that respect.

As to section 3 of House Bill No. 729, we understand the unemployment compensation fund there mentioned to be the fund provided for in section 197, Title 26, Code, which consists of "A. All contributions paid in or collected under this chapter, together with all interest and penalties earned or collected pursuant to this chapter. B. Interest earned upon any moneys in the fund. C. Any property or securities acquired through the use of moneys belonging to the fund. D. All earnings of such property or securities."

We also understand that the term "clearing account" referred to in section 3 of House Bill No. 729 to be set up in section 198, Title 26, Code. It provides that all moneys payable to the fund, meaning the unemployment compensation fund, as set up in section 197, Title 26, Code, shall be forwarded to the treasurer (of the fund) who shall immediately deposit them in the "clearing account"; that refunds under section 243 shall be paid from the "clearing account", after which all moneys in that account shall be deposited with the Secretary of the Treasury of the United States to the credit of this State and the Unemployment Trust Fund.

We take it that section 198, supra, would prevent a disposition of the funds in the "clearing account" other than as there mentioned and, therefore, that section 3 of said House Bill 729 conflicts with section 198, Title 26, Code, and thereby modifies it.

But it also has the effect of providing for a potential depletion of the clearing account to the extent of interest and penalties which may enter into it. We understand "interest", as there used, to be such as is

provided in section 238, Title 26, Code; and "penalties" to be as is provided in section 239, Title 26, Code.

■ It is our view that section 213, supra, in connection with section 44 of· the Constitution serves to prevent one legislature from enacting laws which would presently deplete funds available and necessary to meet current operations in future years. In re Opinions of Justices, 227 Ala. 289, 149 So. 775. So that sections 213 and 44 ·of the Constitution read into section 3 of House Bill No. 729 the further condition that the pledge there provided is restricted so as not to deplete the unemployment compensation fund in any given fiscal year in a manner which would abridge the proper administration of that fund, nor to affect the power of future legislatures to repeal or amend sections 238 and 239, Title 26, Code, as may seem then advisable.

With reference to section 4 of House Bill 729, we notice that it provides for diversion of the amounts of taxes levied on insurance premiums for workmen's compensation and employers' liability insurance under Chapter 20, Article 12, section 812 et seq., Title 51, Code.

Under section 28, Title 55, Code, the proceeds of the tax sought to be pledged contingently are covered into the State Treasury to the credit of the general fund and, therefore, cannot be pledged.

Moreover, the power of the legislature in the future over the matters provided for in Article 12, Chapter 20, section 812 et seq., Code, cannot be abridged by law presently enacted.

We do not think therefore that section 4 of the proposed act could withstand section 213 of the Constitution.

■ However, it is our view that sections 1, 2 and 5 of House Bill 729 do not violate section 213 of the Constitution, but that sections 213 and 44 of the Constitution read into section 3 of said bill a provision which we have here stated, and that section 4 of it cannot be effectual.

We do not think it advisable to answer a question as to whether it violates any other section of the Constitution without specific reference to some section. It has not been our policy to do so.

Respectfully submitted,
JOEL B. BROWN
ARTHUR B. FOSTER
J. ED. LIVINGSTON
THOMAS S. LAWSON
ROBERT T. SIMPSON
DAVIS F. STAKELY,
Associate Justices.