*1358 Members of the House of Representatives
Alabama State House
Montgomery, Alabama 36130
Dear Representatives:
We have received House Resolution No. 176 (“the Resolution”) by which you request the opinion of the Justices as to whether House Bill 586 (sometimes herein called the “Bill”), now pending in the House of Representatives, violates the Constitution of Alabama of 1901, as amended.
We are aware that H.B. 586 was introduced to honor the State’s commitment to Mercedes-Benz, and we applaud the legislature’s willingness to do so. We also applaud Mercedes-Benz for its decision to locate its facility in Alabama, and we are confident that the administration and the legislative leadership will find a way to honor Alabama’s part of the bargain. We regret that we are compelled to conclude that H.B. 586 violates at least two provisions of the Constitution.
The specific questions propounded to this Court are:
“(1) Do the provisions of Section 11 of H.B. 586 that constitute a continuing withdrawal and appropriation to the Authority of a portion of the interest on investments held in the Alabama Trust Fund (the “appropriated funds”) violate the provisions of Section 5(a) of Amendment No. 450 to the Constitution of Alabama of 1901?
“(2) Do the provisions of Section 11 and Section 8(d) of H.B. 586, which, taken together, appropriate the appropriated funds to the Authority from the Alabama Trust Fund and authorize the Authority to pledge the appropriated funds for payment of its obligations, violate Section 213 of the Constitution of Alabama, as amended?
“(3) Do the provisions of Section 12(a)(3) of H.B. 586, which, taken together with Sections 8(a), 8(d), and 11(a) of H.B. 586, authorize the financing by the Authority, through the issuance of bonds secured by a pledge of the appropriated funds, of industrial or research facilities that may be leased to a private entity (with an option granted to said entity to purchase at fair market value), violate the provisions of Section 93 of the Constitution of Alabama of 1901, as amended?
“(4) Do the provisions of Section 12(a)(4) of H.B. 586, which, taken together with Sections 8(a), 8(d), and 11(a) of H.B. 586, authorize the financing by the Authority, through the issuance of bonds secured by a pledge of the appropriated funds, of industrial or research facilities to be owned by a private entity but with limitations upon the disposition of the financed facilities, violate Section 93 of the Constitution of Alabama of 1901, as amended?
“(5) Do the provisions of Section 12(a)(5) of H.B. 586, which, taken together with Sections 8(a), 8(d), and 11(a) of H.B. 586, authorize the financing by the Authority, through the issuance of bonds secured by a pledge of the appropriated funds, of a training facility to be operated and managed by a private entity (with an option granted to said entity to purchase at fair market value) and of management fees to be paid to said entity, violate Section 93 of the Constitution of Alabama of 1901, as amended?”
Our response to the first question of this Resolution is that the appropriation that would be made by Section 11 of House Bill 586 would be contrary to § 5(a) of Amendment No. 450 of the Alabama Constitution, 1901. Section 5(a) of Amendment No. 450 states:
“The trust capital shall be held in perpetual trust and shall not be appropriated by the legislature or expended or disbursed for any purpose other than to acquire eligible investments in accordance with the provisions of this amendment.... [But] any trust income derived therefrom shall be paid directly into the general fund as it is received by the board, subject to appropriation and withdrawal by the legislature.”
(Emphasis added.) In the Amendment, “trust income” is defined as “the net income received by the state, subsequent to the transfer of the initial trust capital by the state treasurer to the board, from the investment and reinvestment of all assets of the trust fund, determined in accordance with the provisions of this amendment.”
*1359 Under this Bill, the legislature provides for a continuing appropriation over a period of 30 years, beginning in 1995, from the annual interest earned on investments of the Alabama Trust Fund to the Alabama Incentives Financing Authority. While the legislature’s broad governmental power is plenary in character, it is not absolute and is subject to the express restrictions of the state constitution. Van Hart v. deGraffenried, 388 So.2d 1196, 1198 (Ala.1980); see also, e.g., City of Birmingham v. City of Vestavia Hills, 654 So.2d 532 (Ala.1995). Amendment No. 450, by express language, requires that the interest earnings on investments be paid into the state’s General Fund upon receipt. After the trust income has been paid into the General Fund, the legislature may appropriate it as it sees fit, subject to constitutional restrictions. Article IV, § 71, of the Alabama Constitution, 1901, is one such constitutional restriction on the legislature’s power to appropriate funds. According to § 71:
“The general appropriations bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for public schools_ All other appropriations shall be made by separate bills, each embracing but one subject.”
(Emphasis added.)
The legislature declares in § 11(a) of the Bill that the appropriation “is made pursuant to and in accordance with [Amendment No. 450] and that the interest income on investments in the Alabama Trust Fund is not a part of the General Fund of the State until deposited in the General Fund.” The Governor, in his brief, argues that the appropriation of specified, annual installments of income from the Alabama Trust Fund for 30 years, made by Section 11 of H.B. 586, does not constitute an appropriation of money in the state’s General Fund because the money is appropriated before it reaches the state’s General Fund. The simple answer to this contention is: The constitution itself states that the income from investments of the Alabama Trust Fund shall be paid directly to the state’s General Fund. The legislature is without power to override this express constitutional provision by the subterfuge of diverting such funds before they are actually paid into the General Fund. House Bill 586 is invalid, because it is in direct conflict with the constitutional provisions of Amendment No. 450. The constitution has “earmarked” these funds for the General Fund.
The Governor states in his brief that, because under H.B. 586 the legislature would be powerless to control the interest income earned by the Alabama Trust Fund, a fact in contrast to its ability to increase a special tax to service a debt, the scheme authorized by the Bill is not a debt of the state. He asserts it is the economic and legal equivalent of an annual appropriation. We cannot agree. The inescapable fact is: by constitutional mandate these funds are required to be paid into the General Fund as received, and the legislature is bound by the constitution to appropriate those funds only as permitted by express provisions of the constitution.
The legislature may not avoid constitutional restrictions on its authority to appropriate state funds by “diverting” such funds from the General Fund before they are received by the General Fund. A comparison of the language in Amendment No. 450, which established the Alabama Trust Fund, with the language used in Amendment No. 394, which created the Alabama Heritage Trust Fund, shows that H.B. 586 violates Amendment No. 450. Amendment No. 394 provides:
“[T]he trust capital shall be held in perpetual trust and shall not be appropriated by the legislature or expended or disbursed for any purpose other than to acquire eligible investments in accordance with the provisions of this amendment. All eligible investments acquired, in whole or in part, with moneys constituting part of the trust capital shall to the extent of such moneys constitute part of the trust capital, but any trust income derived therefrom shall be subject to appropriation and withdrawal by the legislature to the extent provided in this amendment.”
(Emphasis added.) While this language substantially mirrors § 5(a) of Amendment No. *1360 450,[1] Amendment No. 394 continues:
“Until and including the last day of the fiscal year next succeeding the fiscal year during which any trust income shall be received into the trust fund, the legislature may at any time and from time to time, whether before or after the actual receipt of such trust income, enact laws appropriating all or any part of such trust income for any lawful purpose, and any trust income so appropriated may be withdrawn from the trust fund at any time after receipt thereof; provided, however, that the right of the legislature to appropriate any trust income prior to the actual receipt thereof shall not be construed to authorize the recognition and withdrawal of any moneys equivalent to such trust income prior to the actual receipt thereof into the trust fund. If any trust income shall not be appropriated by a law which becomes effective on or before the last day of the fiscal year next succeeding that during which it was received, such trust income shall thereafter cease to be subject to appropriation and shall become part of the trust capital to be held in the trust fond on the same terms and conditions as are applicable to all other assets constituting the trust capital. Any trust income appropriated by a law becoming effective on or before the last day of the fiscal year next succeeding that during when it was received shall remain trust income even though it is permitted to remain in the trust fund after the end of such fiscal year, and any such trust income shall be subject to withdrawal from the trust fund at any time thereafter in the manner provided by law for the purposes for which it shall theretofore have been appropriated.”
(Emphasis added.) Amendment No. 394 expressly provides for the legislature to appropriate funds of the Alabama Heritage Trust Fund before or after they are received; Amendment No. 460 does not similarly authorize the legislature to appropriate funds of the Alabama Trust Fund before they are received. To the contrary, this constitutional provision requires that upon receipt by the Fund such investment income shall be paid directly to the General Fund.
The Board of Trustees of the Alabama Trust Fund- is required by constitutional mandate to deliver interest income to the state General Fund as received; the Board would be in violation of the constitution if it transferred such funds directly to the Alabama Incentives Financing Authority or into its special account. Amendment No. 450 does authorize the legislature to appropriate and withdraw such funds, once they are received into the General Fund, consistent with other provisions of the constitution.
The continuing appropriation authorized by Section 11 of the Bill violates § 5(a) of Amendment No. 450 and § 71 of Article IV of the Constitution, 1901.
The second question of the Resolution asks whether the provisions of Section 11 and Section 8(d) of House Bill 586, taken together, which appropriate funds from the Alabama Trust Fund and pledge these funds for the payment of obligations of the Alabama Incentives Financing Authority, violate § 213 of Article XI of the Alabama Constitution of 1901, as amended. Section 213 states that “no new debt shall be created against, or incurred by the state, or its authority.” This appropriation also violates § 213 of the constitution.
The Governor’s brief points out that there are four types of bonds issued by the state and its agencies and corporations:
1. General obligation bonds approved by constitutional amendment and secured by the full faith and credit of the state;
2. Moral obligation bonds consisting of bonds payable solely out of the revenues of the state received during a single fiscal year and subject to annual appropriation of those revenues by the legislature;
3. Revenue bonds issued by state entities which produce revenues and which are payable solely out of the revenues produced;
*1361 4. Special obligation bonds payable solely from a special tax or a special fund.
H.B. 586 is more akin to a special obligation bond than to any of the first three. Of course it creates no special tax to pay the bonds, but instead provides that the bonds shall be paid from interest earned by the Alabama Trust Fund, which the Governor argues is a “special fund” sufficient to evade the constitutional prohibition against any new debt of the state.
House Bill 586 appropriates investment income earned by the Alabama Trust Fund to pay the obligations of the Alabama Incentives Financing Authority. This legislative action would clearly create a new debt of the state, in violation of § 218, if the funds were taken from the General Fund to pay these obligations. This Bill attempts to avoid this constitutional barrier to new debt of the state by “diverting” funds, which are constitutionally required to be paid to the General Fund, before those funds reach the General Fund. As we have shown in the discussion of Amendment No. 450, the constitution does not permit this subterfuge.
Section 213 of the constitution prevents one legislature from enacting laws that would deplete funds available and necessary to meet current obligations in future years. Opinion of the Justices, No. 99, 252 Ala. 468, 471, 41 So.2d 771, 774 (1949). By H.B. 586, the current legislature, by a continuing appropriation, would deplete, for 30 years, funds that would otherwise be available to meet the state’s obligations in future years. The constitution expressly voids such legislation. As stated in Amendment No. 26 of the constitution (which amended § 213), “[a]ny act creating or incurring any new debt against the state, except as herein provided for, shall be absolutely void.” (Emphasis added.)
The Justices have expressed the opinion that a state corporation or authority may create debt without violating this provision of the constitution, if no obligation is imposed on the state to pay money. Opinion of the Justices, No. 183, 278 Ala. 298, 304-05, 178 So.2d 76, 82-83 (1965). Only where no liability or debt is imposed upon the state may a state corporation create a debt for its own account, without violating this provision of the constitution. Norton v. Lusk, 248 Ala. 110, 117, 26 So.2d 849, 854 (1946).
In Opinion of the Justices, No. 88, 251 Ala. 91, 36 So.2d 475 (1948), this Court, advising on the constitutionality of a plan whereby a public corporation would lease a state office building to the state on a monthly basis for 30 years, stated that “the proposal is expressly to bind the State at all events to pay money monthly for a period of thirty years. That is what a debt is.” 251 Ala. at 95, 36 So.2d at 479. Similarly, according to this bill, the legislature has appropriated, from the Alabama Trust Fund interest income, $6,000,000 in the fiscal year beginning October 1, 1995, and $13,000,000 for each of the following 29 fiscal years to end on September 30, 2025. This type of continuing appropriation, as stated in Opinion of the Justices, No. 88, supra, is defined as debt. While a corporation may be created to build office buildings to be leased by the state for use for essential state purposes without violating this section, such buildings must be leased to the state on annual agreements and may not be funded with appropriations for future years. See Opinion of the Justices, No. 99, 252 Ala. 468, 471, 41 So.2d 771, 774 (1949). A bill that authorized a lease to the state for 30 years violated Section 213, as amended. See Opinion of the Justices, No. 88, 251 Ala. 91, 95, 36 So.2d 475, 479 (1948). These are examples of moral obligation bonds listed above. The theory is that the state will not fail to annually appropriate money to retire bonds that are issued to build buildings for essential functions of government. To do so would, of course, ruin the state’s credit and make it impossible to attract investors for bonds issued to fund essential state functions.
The pledge of revenue from an existing source constitutes a debt of the state when the pledge diverts funds that could have been used for other purposes. Opinion of the Justices, No. 157, 266 Ala. 78, 79, 93 So.2d 923, 924 (1957). Interest on the income of the Alabama Trust Fund is available to the state for general purposes, and to “divert” the interest income violates § 213 of *1362 the constitution. No constitutional distinction exists between money the state already has and that which it will receive. As stated in Opinion of the Justices, No. 157, 266 Ala. 78, 79, 93 So.2d 923, 924 (1957):
“If the State pledges income from an existing facility, to repay borrowed money, there is then a pledge of something the State already has, a part of the credit of the State.
“We do not think it can be questioned that rent from [an existing facility] is the property of the State of Alabama. This rent is income of the State....
“We are, therefore, of opinion that the proposed pledge of revenues from an existing dormitory to payment of the bonds would be, in substance, a transaction creating a new debt of the State which is declared by § 213 of the Constitution to be void.”
The constitution permits the creation of public authorities and permits them to incur debt without violating the constitution’s prohibition against the state’s incurring new debt, but only because the state, in that instance, has no obligation to pay the debt of the authorities. By this Bill, the state assumes the obligation of a public corporation and pledges moneys that, by constitutional mandate must be paid directly to the state’s General Fund. The constitution expressly prohibits the use of funds that would otherwise be available to the General Fund for the payment of obligations of a public authority. Such an authority is permitted by the constitution to incur such debts only because the state is expressly not obligated to pay them.
As observed by Chief Justice Torbert and Justice Almon in disagreeing with a majority of the Justices in Opinion of the Justices, No. 286, 407 So.2d 548 (Ala.1981), there is language in some of our cases, and especially in some other advisory opinions, that suggests that the constitutional restrictions of § 93 and § 213 do not apply to public corporations. 407 So.2d at 553. We are of the opinion that both of these constitutional provisions apply to public corporations. Obviously, the constitution cannot be circumvented merely by forming a public corporation and authorizing it to do what the legislature is forbidden to do by the constitution. We agree with the former Chief Justice and with Justice Almon that this Court must never give its approval (absent express constitutional authorization) to finance from public funds (the general revenues of the state) the debts of corporations, private or public. Only when new revenue sources are provided may the debt of a public corporation not be considered a debt of the state in contravention of § 213.
Edmonson v. State Industrial Development Authority, 279 Ala. 206, 184 So.2d 115 (1966), is the seminal case on this subject. It upheld Act No. 662, Ala.Acts 1965, which created a public corporation known as the State Industrial Development Authority, and Act No. 654, Ala.Acts 1965, which levied a tax on cigarettes pledged to the extent necessary for the payment of bonds of the Authority. Edmonson constitutes the most liberal interpretation of § 213 that this court has issued. Edmonson and its progeny hold that the state may pledge irrevocably a particular revenue stream over many fiscal years for the payment of long-term bonds issued by a public corporation, without violating § 213. However, critical to the Edmonson holding is the fact that the bonds must be retired by a new revenue source, one that has not theretofore been payable to the General Fund. In every situation where Edmonson has been applied, every new debt has been paid by new taxes, which did not exist before the issuance of the bonds. In no case have existing funds of the state been permitted to be diverted to pay these new debts.
House Bill 586 runs afoul of § 213 because it does not create a new revenue source to retire the bonds to be issued by the new public authority but attempts to divert funds that heretofore have been and, by constitutional provision, must be paid into the General Fund. The fact that the legislature can identify and segregate an existing revenue source does not change the fact that the funds are general funds of the state heretofore available for other state purposes. In order to escape being a new debt under the Edmonson doctrine, there must be a new source of revenue provided to retire the debt.
*1363 Edmonson also establishes seven conditions that must be met to avoid the strictures of § 213. 279 Ala. at 211, 184 So.2d at 119-20. Four of those conditions are met by H.B. 586: (1) It provides for the bonds to be issued by a public corporation and for such bonds to be limited obligations payable solely out of the funds appropriated; (2) it provides in express terms that the bonds shall not constitute a debt of the state; (3) it does not pledge the faith and credit of the state nor contain an agreement to pay debt service from other funds if those appropriated should be insufficient to pay the debt service; and (4) there is a purpose of statewide interest. Id. This Bill fails the Edmonson test in that it does not establish a new tax or revenue source to be appropriated for the debt service. Instead, H.B. 586 identifies and segregates an existing revenue source and attempts to make existing revenues the source of payment of the bonds, which the constitution does not permit. To escape the strictures of § 213, a new debt must be payable from a new source, such as a special tax.
As noted in the amicus brief filed by the Alabama State Employees Association (“ASEA”), “the reliance upon a special tax has [since Edmonson ] constituted a safeguard against fiscal improvidence, because money has not been borrowed without a concurrent provision for a new source of payment that is unencumbered to the extent necessary to attract purchasers of the bonds.” ASEA brief at 19. (emphasis added). House Bill 586 shifts the burden of the new debt service to General Fund revenues. Section 213 will not permit a new debt without a new source of revenue to retire that debt.
We have not found, nor have the persons filing briefs here cited, any case in which this Court has upheld a statute that created a public authority and authorized it to incur debt that was to be paid from the General Fund of this state. Although the language used in some opinions has often been too broad, each statute that has survived a § 213 challenge, has, in addition to creating a public corporation, also contained provisions that make a continuing appropriation and an irrevocable pledge of a special new tax out of which the bonds of the public corporation are payable.
In Opinion of the Justices, No. 286, supra, the appropriation was of moneys then held as a part of the General Fund and available for appropriation by the legislature for any lawful purpose. 407 So.2d at 549. The appropriation approved by that opinion was a onetime appropriation for the current fiscal year; there was no appropriation from the General Fund for the payment of debt service in future years.
We do not agree with the Governor’s statement in his brief that McBurney v. Ruth, 527 So.2d 1265 (Ala.1988), is dispositive of the issue. That case upheld a bond issue by a public corporation that was to be payable from the revenues from the project, and if the revenues were insufficient, from a portion of TVA’s in-lieu-of-taxes payments to the state. The Court held that these bonds did not create a debt of the state, “because the TVA payments are made pursuant to federal law and are not proceeds of any tax levied by the state” 527 So.2d at 1269. The Governor argues that there is no distinction between this holding and the conclusion that the obligations of the Authority involved here will not be debts of the state. There is a critical difference. Purchasers of the TVA bonds discussed in McBumey are aware that Congress can suspend payments in lieu of taxes paid to the state by the TVA at any time. H. 586, on'the contrary, pledges interest income on the corpus of the Alabama Trust Fund for the payment of these bonds. To the extent that the corpus earns interest income, it is pledged to the payment of these bonds, up to the amount pledged in each year under the Bill. That is a distinction with a difference.
Therefore, H. 586 violates § 213, Article XI of the Constitution, 1901, as amended. Because we conclude that H. 586 violates Amendment No. 450 and § 213 of the Constitution of 1901, we need not address whether § 93 is implicated.
QUESTIONS ANSWERED.
Respectfully submitted,
SONNY HORNSBY Chief Justice
*1364 RENEAU P. ALMON
JANIE L. SHORES
MARK KENNEDY
KENNETH F. INGRAM
RALPH D. COOK
TERRY L. BUTTS Justices

. However, § 5(a) of Amendment No. 450 provides for the trust income to “be paid directly into the general fund as it received by the board,” but § 5(a) of Amendment No. 394 does not contain this provision.