Honorable Robert Bentley
Governor of Alabama
State Capitol
Montgomery, Alabama 36130
*848 Dear Governor Bentley:
We have received your letter requesting an advisory opinion pursuant to § 12-2-10, Ala.Code 1975,[1] as to the constitutionality of Senate Bill 373 (“S.B. 373”), which allows an “approved entity,” as that term is defined in S.B. 373, to retain a percentage of state income taxes withheld from “eligible employees,” “in consideration of §§ 211.01, 211.02, and 212, or other potentially applicable provisions of Alabama’s Constitution.”

Senate Bill 373

S.B. 373 reads as follows:
“BE IT ENACTED BY THE LEGISLATURE OF ALABAMA:
“Section 1. The Legislature makes the following findings:
“(1) The economic well-being of the citizens of the state will be enhanced by the increased development and growth of industry within the state and it is in the best interests of the state to provide for certain incentives to allow the state to promote such economic development through the recruitment, retention, and expansion of quality projects within the state.
“(2) The incentives provided in this act will assist the state in encouraging the retention of existing jobs that may otherwise be terminated or displaced, and the creation of new jobs which may not otherwise exist within the state, and the incentives will help retain and create sources of tax revenues for the state and its political subdivisions.
“(3) The Alabama Development Office and the Department of Revenue shall implement this act and exercise all powers as authorized in this act; however, the application of this act or the offering of any of its incentives as to any particular approved entity shall be in the sole discretion of the State Industrial Development Authority upon the written recommendation of the ADO Director, the Commissioner of Revenue, and the Governor.
“(4) The powers to be granted and the purposes to be accomplished by this act are proper governmental and public purposes and the inducement of the recruitment, retention, or expansion of quality projects within the state is of paramount importance.
“(5) Nothing in this act shall be construed to constitute a guarantee or assumption by the state of any debt of any individual, company, corporation, or association nor to authorize the credit of the state to be given, pledged, or loaned to any individual, company, corporation, or association.
“(6) Nothing in this act gives any approved entity any right to the incentives authorized by this act unless the incentives are approved by the State Industrial Development Authority pursuant to this act.
“(7) This act is intended to be revenue-neutral with regard to employee withholdings and potential refunds.
“Section 2. The following words and phrases shall have the following meanings:
“(1) ADO. The Alabama Development Office.
“(2) APPROVED ENTITY. Any company or educational institution recommended by the ADO Director, the Commissioner of Revenue, and the Governor in writing and approved by the State Industrial Development Authority *849 in writing pursuant to this act which undertakes a qualifying project.
“(3) CAPITAL COSTS. All costs and expenses incurred by an approved entity in connection with the acquisition, construction, installation, and equipping of a qualifying project during the period commencing with the date on which such acquisition, construction, installation, and equipping commences and ending on the date on which the qualifying project is placed in service, including, without limitation, all of the following:
“a. The costs of acquiring, constructing, installing, and equipping a qualifying project, including all obligations incurred for labor and to contractors, subcontractors, builders, and materialmen.
“b. The costs of acquiring land or rights in land.
“c. The costs of architectural and engineering services, including test bor-ings, surveys, estimates, plans and specifications, preliminary investigations, environmental mitigation, and supervision of construction, as well as for the performance of all the duties required by or consequent upon the acquisition, construction, and installation of a qualifying project.
“d. The costs associated with installation of fixtures and equipment; surveys, including archaeological and environmental surveys; site tests and inspections; subsurface site work; excavation; removal of structures, roadways, cemeteries, and other surface obstructions; filling, grading, paving and provisions for drainage, storm water retention, installation of utilities, including water, sewer, sewage treatment, gas, electricity, communications, and similar facilities; and off-site construction of utility extensions to the boundaries of the property.
“e. All other costs of a nature comparable to those described.
“f. Costs otherwise defined as capital costs that are incurred by the approved entity where the approved entity is the lessee under a lease that: 1. Has a term of not less than five years, and 2. is characterized as a capital lease for federal income tax purposes; provided, that if the project is a headquarters facility with a lease term of not less than five years, a research and development facility with a lease term of not less than 10 years, or a project at which the predominant trade or business activity conducted is described in the 2007 North American Industry Classification System, promulgated by the Executive Office of the President of the United States, Office of Management and Budget, Sectors 31 (other than National Industry 311811), 32, and 33 with a lease terms of not less than 10 years, the lease may be characterized as an operating lease for federal income tax purposes in which event capital costs shall include the net present value of the payments made by the approved entity under the lease computed using the applicable federal rate for the month in which the qualifying project is placed in service and for the term most closely approximating the term of the lease. Capital costs shall not include property owned or leased by the approved entity or a related entity before the commencement of the acquisition, construction, installation, or equipping of the qualifying project unless such property was physically located outside the state for a period of at least one year prior to the date on which the qualifying project was placed in service.
“g. Costs either paid or incurred by 1. a public entity for the benefit of a qualifying project where such costs are treated as costs paid by an approved *850 entity with respect to the qualifying project for federal income tax purposes, such costs shall not include amounts contributed by a public entity to a qualifying project as a capital contribution or gift except to the extent that an approved entity has cost basis in the contribution or gift for federal income tax purposes; or 2. a related entity to an approved entity to the extent such costs are included in or taken into account in determining the approved entity’s capital expenditures in the qualifying project, whether or not incurred by an approved entity.
“(4) COMPANY. Any corporation, partnership, limited liability company, proprietorship, trust, or other business entity, regardless of form.
“(5) DATA PROCESSING CENTER. An establishment engaged predominantly in the provision of complete processing and specialized reports from data, the provision of automated data processing and data entry services, the provision of an infrastructure for hosting of data processing services, the provision of specialized hosting activities, the provision of application service provisioning, the provision of general time-share mainframe facilities, or some combination of the foregoing.
“(6) EDUCATIONAL INSTITUTION. A college or university in the state, whether the college or university is established or recognized under the Constitution of Alabama of 1901, or by act of the Legislature.
“(7) ELIGIBLE EMPLOYEES. Those persons, as set forth in a qualifying project agreement, a. who are being paid directly by an approved entity for working at a qualifying project for not less than 36 hours per work week, whose workday is fully dedicated to the qualifying project, b. who the approved entity identifies as its employees to the U.S. Internal Revenue Service, the Department of Revenue, or the Department of Industrial Relations on returns or reports filed with the foregoing, including, but not limited to, IRS Form 941, and c. who are eligible to participate under such benefit plans as are generally applicable to employees holding positions of like kind and character within either the approved entity or a related entity whose employee benefits are equivalent to or better than, from an employee perspective, the approved entity’s employee benefits.
“(8) FAVORED GEOGRAPHIC AREA. The definition in Section 40-18-190, Code of Alabama 1975.
“(9) GRANT. A transfer of money or property to a transferee that is not a related entity to or an agent of the transferor. The transfer shall not impose any obligation or condition to directly or indirectly repay any amount to the transferor. Obligations or conditions intended solely to assure expenditure of the transferred money or property in accordance with the purpose of the transfer do not prevent a transfer from being a grant.
“(10) HEADQUARTERS FACILITY. Any trade or business described in the 2007 North American Industry Classification System, promulgated by the Executive Office of the President of the United States, Office of Management and Budget, National Industry 551114.
“(11) INCENTIVE PERIOD. The time period set forth in a qualifying project agreement for which an approved entity may receive withholding incentives.
“(12) INDUSTRIAL, WAREHOUSING, OR RESEARCH ACTIVITY. Any trade or business described in the 2007 North American Industry Classification System, promulgated by the Executive Office of the President of the *851 United States, Office of Management and Budget, Sectors 31 (other than National Industry 311811), 32, and 33; Sub-sectors 423, 424, 493, 511, and 927; Industry Groups 5417, 5415, and 5182, without regard to the premise that data processing and related services be performed in conjunction with a third party; Industries 11331 and 48691; and National Industries 115111, 517110, 541380, and 561422, other than establishments that originate telephone calls, and includes such trades and businesses as may be hereafter reclassified in any subsequent publication of the North American Industry Classification System or other industry classification system developed in conjunction with the United States Department of Commerce, or any process or treatment facility which recycles, reclaims, or converts materials, which include solids, liquids, or gases, to a reusable product.
“(13) NEW OR EXPANSION PROJECT. A project meeting any one of the following requirements:
“a. A headquarters facility at which the predominant trade or business activity conducted will not be the production of electricity.
“b. A data processing center.
“c. A research and development facility.
“d. A qualified educational facility.
“e. A project at which the predominant trade or business activity conducted will constitute industrial, warehousing, or research activity or any other business activity described in Section 40-18-190, Code of Alabama 1975, without regard to whether the minimum capital costs requirement set forth for the business activity is satisfied.
“(14) PROJECT. Any land, building, or other improvement, and all real and personal properties deemed necessary or useful in connection therewith, whether or not previously in existence, located or to be located in the state.
“(15) PUBLIC ENTITY. A public industrial development board or authority, municipality, or county, or other public corporation or political subdivision.
“(16) QUALIFIED GRANT. A competitively awarded grant made to an educational institution by an entity other than the state.
“(17) QUALIFIED EDUCATIONAL FACILITY. A facility at any educational institution.
“(18) QUALIFYING PROJECT. Any new or expansion project or retention project to be undertaken by an approved entity. Any proposed qualifying project shall be characterized, in the sole discretion of the State Industrial Development Authority upon the written recommendation of the ADO Director, the Commissioner of Revenue, and the Governor, as either a new or expansion project or a retention project. In making this characterization, the State Industrial Development Authority may consider any criteria which it considers to be appropriate.
“(19) QUALIFYING PROJECT AGREEMENT. An executed agreement entered into between the state and an approved entity that describes the qualifying project and sets forth the withholding incentives, the incentive period, the number of eligible employees, any termination provisions, or provisions which allow the state to recapture withholding incentives in the event the approved entity fails to meet certain minimum job or capital investment requirements, or both, and any other terms and conditions which the state, in its sole discretion, may require for an approved entity to qualify for and receive withholding incentives.
*852 “(20) RELATED ENTITY. Any company or educational institutional that is under common management or control with an approved entity. No educational institution shall be considered a related entity of another educational institution and no educational institution shall be considered a related entity of the state.
“(21) RESEARCH AND DEVELOPMENT FACILITY. An establishment engaged predominantly in conducting original inyestigations undertaken on a systematic basis to gain new knowledge or applying research findings or other scientific knowledge to create new or significantly improved products or processes, or both.
“(22) RETENTION PROJECT. A project, to be used as part of an existing facility of a company or educational institution located in the state, meeting both of the following requirements:
“a. The project is described in paragraphs a. through e. of subdivision (13).
“b. The capital costs of the project are not less than the following:
“1. Two million dollars ($2,000,000), if the project is not located in a favored geographic area.
“2. Five hundred thousand dollars ($500,000), if the project is located in a favored geographic area.
“(23) WITHHOLDING INCENTIVES. Incentives in the form of the retention by an approved entity of a percentage of state income taxes withheld from eligible employees.
“Section 3. (a) The ADO Director and the Commissioner of Revenue shall determine, upon initial application on a form approved by the ADO and the Department of Revenue, whether to recommend to the Governor, in writing, that a company or educational institution be approved by the State Industrial Development Authority as an approved entity. In making their determination, the ADO Director ánd the Commissioner of Revenue may consider any criteria which they consider, in their sole discretion, to be appropriate. The ADO Director and the Commissioner of Revenue, in making their determination, shall conduct a cost/benefit analysis with respect to a proposed qualifying project and the withholding incentives proposed to be granted by the State Industrial Development Authority with respect thereto.
“(b) After reviewing the recommendation of the ADO Director and the Commissioner of Revenue, the Governor, in his or her. sole discretion, shall determine whether to recommend to the State Industrial Development Authority, in writing, that a company or educational institution be approved by the State Industrial Development Authority as an approved entity.
“(c) After reviewing the recommendations of the ADO Director, the Commissioner of Revenue, and the Governor, the State Industrial Development Authority, in its sole discretion, shall determine whether to approve, in writing, a company or educational institution as an approved entity. In making its determination, the State Industrial Development Authority shall consider whether approving a company or educational institution as an approved entity serves a valid public purpose and is in the best interests of the citizens of the state.
“(d) After the State Industrial Development Authority approves a company or educational institution as an approved entity, the approved entity must enter into a qualifying project agreement with the state in order to qualify for and receive withholding incentives. The authority, in its sole discretion, may require that an approved entity meet minimum job or capital investment re *853 quirements, or both, to avoid the state recapturing withholding incentives or terminating the qualifying project agreement.
“Section 4. (a) An approved entity that meets the qualifications specified in this act shall qualify to receive withholding incentives in an amount, determined in the sole discretion of the State Industrial Development Authority, equal to:
“(1) In the case of a new or expansion project, one percent to 90 percent of the amount of state income taxes withheld from eligible employees.
“(2) In the case of a retention project, one percent to 75 percent of the amount of state income taxes withheld from eligible employees.
“(b) The incentive period shall be determined in the sole discretion of the State Industrial Development Authority upon written recommendations by the ADO Director, the Commissioner of Revenue, and the Governor, except that in no event shall the incentive period exceed 20 years after a qualifying project is placed in service.
“(c) Withholding incentives shall be reduced or eliminated with respect to a qualifying project at the time the sum of all withholding incentives received with respect to such qualifying project and capital credits received under Article 7, Chapter 18 of Title 40, Code of Alabama 1975, with respect to such qualifying project equals 100 percent of the capital costs of such qualifying project, all to the end that the aggregate amount of withholding incentives and capital credits shall not exceed 100 percent of the capital costs of the qualifying project.
“(d) An eligible employee is allowed a credit against his or her state income taxes in an amount equal to 100 percent of the withholding incentives retained by an approved entity from his or her wages during the tax year.
“Section 5. (a) Within 90 days after the end of a calendar quarter for which an approved entity has qualified to receive a withholding incentive, the approved entity shall certify to the Department of Revenue, on a form approved by the Department of Revenue, the actual number of eligible employees for the calendar quarter, the payroll of eligible employees for the calendar quarter, and any other information required by the qualifying project agreement. The Department of Industrial Relations shall verify the actual number of eligible employees employed at the qualifying project during the relevant calendar quarter. If the Department of Industrial Relations is not able to provide such verification utilizing all available resources, the Department of Revenue may request such additional information from the approved entity as may be necessary. The Department of Revenue may audit any approved entity periodically to monitor compliance by the approved entity with this act.
“(b) An approved entity may receive withholding incentives only in accordance with a qualifying project agreement. If an approved entity that is receiving withholding incentives expands a qualifying project, it may apply to the ADO and the Department of Revenue for additional withholding incentives based on the new eligible employees.
“Section 6. The ADO, the Department of Revenue, and the State Industrial Development Authority, with the assistance of other agencies, may adopt rules, in accordance with the Administrative Procedure Act, and application forms and other forms necessary to implement their respective duties and responsibilities under this act.
“Section 7. All laws or parts of laws which conflict with this act are repealed.
*854 “Section 8. This act shall become effective immediately following its passage and approval by the Governor or its otherwise becoming law.”

Relevant Constitutional Provisions

Section 211.01 of the Alabama Constitution of 1901 provides:
“The legislature shall have the power to levy and collect taxes for state purposes on net incomes from whatever source derived within this state, including the incomes derived from salaries, fees and compensation paid from the state, county, municipality, and any agency or creature thereof, for the calendar year, 1933, and thereafter and to designate and define the incomes to be taxed and to fix the rates of taxes, provided that the rate shall not exceed 5 percent nor 3 percent on corporations. Income shall not be deemed property for purposes of ad valorem taxes. From net income an exemption of not less than fifteen hundred dollars ($1,500.00) shall be allowed to unmarried persons and an exemption of not less than three thousand dollars ($3,000.00) shall be allowed to the head of a family, provided that only one exemption shall be allowed to husband and wife where they are living together and make separate returns for income tax. An exemption of not less than three hundred dollars ($300.00) shall be allowed for each dependent member of the family of an income tax payer under the age of 18 years. The legislature shall reduce the ad valorem tax from time to time when and to such an amount as the revenue derived from the income tax will justify. In the event the legislature levies an income tax, such tax must be levied upon the salaries, income, fees, or other compensation of state, county and municipal officers and employees, on the same basis as such income taxes are levied upon other persons. All income derived from such tax shall be held in trust for the payment of the floating debt of Alabama until all debts due on Oct. 1st, 1932, are paid and thereafter used exclusively for the reduction of state ad valorem taxes.”
Section 211.02 of the Alabama Constitution of 1901 provides:
“Section A. The entire proceeds of the income tax in the treasury of the state of Alabama on September 30,1947, including cash and investments and the interest thereon, shall be used for the following purposes and in the following manner: 1st. The sum of $12,249,860.00 shall be and is hereby set aside and shall be and is hereby constituted an irrevocable trust fund for the purpose of paying the principal of and interest on the bonds issued by the state of Alabama commonly known as ‘income tax bonds,’ being the warrant refunding bonds issued to fund the floating debt existing October 1, 1932, which bonds were issued under the authority of Act No. 14 approved February 5, 1935 [Acts 1935, p. 27], and Act No. 50 approved February 8, 1935 [Acts 1935, p. 118]. 2nd. An amount (approximately $6,700,000.00) which, when added to the sinking fund (approximately $1,857,000.00) heretofore created to pay the bonds issued by the state of Alabama, commonly known as the ‘old bonded debt’ and as ‘carpet bag bonds’ together with the interest on said sinking fund accrued on September 30, 1947, shall equal the principal of said bonds in the sum of $8,557,000.00, shall be and is hereby set aside, and together with said sinking fund and the interest thereon, shall be and is hereby constituted an irrevocable trust fund for the purpose of paying the principal of said bonds upon their maturity, said bonds being the class A renewal bonds, class C renewal bonds and funding renewal bonds. That both of the irrevocable trust funds herein created shall be invested in United States government se- *855 eurities by the treasurer of the state of Alabama with the approval of the governor. 3rd. The residue shall be paid over to the building commission created by Act 128 of 1945 General Acts [p. 116] to be expended by said building commission for capital outlay only for educational purposes, provided, however, that not more than twelve per centum of such amount shall be allocated to the institutions of higher learning including the state teachers colleges, and not less than eighty-eight per centum shall be allocated to county and city boards of education on an actual teacher unit basis in accordance with the minimum school program.
“Section B. Beginning October 1, 1947, and thereafter, all net proceeds of such tax, plus the earnings from investment of the trust funds, must be used only in the manner and in the order following: (1) To replace the revenue lost to the several funds of the state by reason of the exemption of homesteads from the state ad valorem tax. All homesteads in Alabama are hereby declared to be exempt from all state ad valorem tax to the extent of at least $2,000.00 in assessed value and a sufficient amount is hereby appropriated from the proceeds of the income tax in each fiscal year to replace the revenue lost to the several funds of the state by reason of the homestead exemption herein declared; (2) The residue shall be placed in the state treasury to the credit of the Alabama special education trust fund to be used for the payment of public school teachers salaries only.
“Section C. This amendment supersedes the provisions of amendment XXV [25] (article XXII) [Article XI, § 211.01] relating to the disposition of the income tax proceeds insofar as the same are in conflict herewith. All laws relating to the income tax, not in conflict herewith and valid on the date of the ratification of this amendment, are hereby validated and confirmed. The provisions hereof with respect to the creation of funds and the use thereof are declared to be self-executing.”

Questions Before this Court

The questions posed by your request are as follows:
1. Does S.B. 373, or any part thereof, violate § 211.01 of the Alabama Constitution of 1901?
2. Does S.B. 373, or any part thereof, violate § 211.02 of the Alabama Constitution of 1901?
3. Does S.B. 373, or any part thereof, violate § 212 of the Alabama Constitution of 1901?[2]

*856
Analysis

S.B. 373 provides withholding incentives for certain approved entities. Those withholding incentives are defined in Section 2 of S.B. 373 as “[ijncentives in the form of the retention by an approved entity of a percentage of state income taxes withheld from eligible employees.” Pursuant to S.B. 373, the State Industrial Development Authority has the sole discretion to allow an approved entity to retain as withholding incentives, in the case of a new or expansion project, 1% to 90%, or, in the case of a retention project, 1% to 75%, of the amount of state income taxes withheld from eligible employees for an incentive period not to exceed 20 years after a qualifying project is placed in service. The withholding incentives are to be reduced or eliminated once the sum of all withholding incentives and certain capital credits equals 100% of the capital costs of the qualifying project.
With regard to the disposition of the proceeds from state income taxes, § 211.02 provides:
“[A]ll net proceeds of such tax, plus the earnings from investment of the trust funds, must be used only in the manner and in the order following: (1) To replace the revenue lost to the several funds of the state by reason of the exemption of homesteads from the state ad valorem tax. All homesteads in Alabama are hereby declared to be exempt from all state ad valorem tax to the extent of at least $2,000.00 in assessed value and a sufficient amount is hereby appropriated from the proceeds of the income tax in each fiscal year to replace the revenue lost to the several funds of the state by reason of the homestead exemption herein declared; (2) The residue shall be placed in the state treasury to the credit of the Alabama special education trust fund to be used for the payment of public school teachers salaries only.”
(Emphasis added.) Section 211.02 clearly and unequivocally provides that all net proceeds of the state income tax must be used only for the two specific purposes designated therein. First, the proceeds must be used “[t]o replace the revenue lost to the several funds of the state by reason of the exemption of homesteads from the state ad valorem tax.” Second, the “residue shall be placed in the state treasury to the credit of the Alabama special education trust fund to be used for the payment of public school teachers salaries only.” (Emphasis added.)
S.B. 373 permits certain approved entities to retain a percentage of state income taxes withheld from the pay of eligible employees. However, § 211.02 requires that “all net proceeds of [the state income] tax” be used for the specific purposes set forth in § 211.02. Therefore, for S.B. 373 not to be violative of § 211.02, the percentage withheld by the approved entities must not constitute “net proceeds of [the state income] tax.”
The Constitution of Alabama of 1901 does not define the phrase “all net proceeds of such tax” as used in § 211.02. Black’s Law Dictionary defines “net proceeds” as “[g]ross proceeds, less charges which may be rightly deducted.” Black’s Law Dictionary 1041 (6th ed.1990). S.B. *857 373 allows an approved entity to retain a percentage of state income taxes withheld from eligible employees. If an approved entity collects state income taxes due from its employees but does not remit those taxes in their entirety to the State, is it possible that such retained amounts would constitute “charges which may be rightly deducted,” rather than “net proceeds of the tax,” so that the Act would not run afoul of § 211.02? The answer to that question is “no.”
In Opinion of the Justices No. 346, 665 So.2d 1357, 1358-59 (Ala.1995), this Court addressed the constitutionality of House Bill 586 in light of § 5(a) of Amendment No. 450 to the Constitution of Alabama of 1901 (now § 219.02, Ala. Const. 1901 (Off.Recomp.)) and held:
“Our response to the first question of this Resolution [requesting the opinion] is that the appropriation that would be made by Section 11 of House Bill 586 would be contrary to § 5(a) of Amendment No. 450 of the Alabama Constitution, 1901. Section 5(a) of Amendment No. 450 states:
‘“The trust capital shall be held in perpetual trust and shall not be appropriated by the legislature or expended or disbursed for any purpose other than to acquire eligible investments in accordance with the provisions of this amendment.... [But] any trust income derived therefrom shall be paid directly into the general fund as it is received by the board, subject to appropriation and withdrawal by the legislature.’
“(Emphasis added.) In the Amendment, ‘trust income’ is defined as ‘the net income received by the state, subsequent to the transfer of the initial trust capital by the state, treasurer to the board, from the investment and reinvestment of all assets of the trust fund, determined in accordance with the provisions of this amendment.’
“Under this Bill, the legislature provides for a continuing appropriation over a period of 30 years, beginning in 1995, from the annual interest earned on investments of the Alabama Trust Fund to the Alabama Incentives Financing Authority. While the legislature’s broad governmental power is plenary in character, it is not absolute and is subject to the express restrictions of the state constitution. Van Hart v. deGraffenried, 388 So.2d 1196, 1198 (Ala.1980); see also, e.g., City of Birmingham v. City of Vestavia Hills, 654 So.2d 532 (Ala.1995). Amendment No. 450, by express language, requires that the interest earnings on investments be paid into the state’s General Fund upon receipt. After the trust income has been paid into the General Fund, the legislature may appropriate it as it sees fit, subject to constitutional restrictions. Article IV, § 71, of the Alabama Constitution, 1901, is one such constitutional restriction on the legislature’s power to appropriate funds. According to § 71:
“ ‘The general appropriations bill shall embrace nothing but appropriations for the ordinary expenses of the executive, legislative, and judicial departments of the state, for interest on the public debt, and for public schools.... All other appropriations shall be made by separate bills, each embracing but one subject.’
“(Emphasis added.)
“The legislature declares in § 11(a) of the Bill that the appropriation ‘is made pursuant to and in accordance with [Amendment No. 450] and that the interest income on investments in the Alabama Trust Fund is not a part of the General Fund of the State until deposited in the General Fund.’ The Governor, *858 in his brief argues that the appropriation of specified, annual installments of income from the Alabama Trust Fund for SO years, made by Section 11 ofH.B. 586,. does not constitute an appropriation of money in the state’s General Fund because the money is appropriated before it reaches the state’s General Fund. The simple answer to this contention is: The constitution itself states that the income from investments of the Alabama Trust Fund shall be paid directly to the state’s General Fund. The legislature is without power to ovemde this express constitutional provision by the subterfuge of diverting such funds before they are actually paid into the General Fund. House Bill 586 is invalid, because it is in direct conflict with the constitutional provisions of Amendment No. 450. The constitution has ‘earmarked’ these funds for the General Fund.
“The Governor states in his brief that, because under H.B. 586 the legislature would be powerless to control the interest income earned by the Alabama Trust Fund, a fact in contrast to its ability to increase a special tax to service a debt, the scheme authorized by the Bill is not a debt of the state. He asserts it is the economic and legal equivalent of an annual appropriation. We cannot agree. The inescapable fact is: by constitutional mandate these funds are required to be paid into the General Fund as received, and the legislature is bound by the constitution to appropriate those funds only as permitted by express provisions of the constitution.

“The legislature may not avoid constitutional restrictions on its authority to appropriate state funds by ‘diverting’ such funds from the General Fund before they are received by the General Fund. ”

(Emphasis, other than as indicated, added.) In that same opinion, this Court also stated: “No constitutional distinction exists between money the state already has and that which it will receive.” 665 So.2d at 1362.
Based on this Court’s reasoning in Opinion of the Justices No. 3⅛6, the legislature may not prevent any amounts that are withheld from employees’ paychecks pursuant to state-income-tax laws from becoming state-income-tax proceeds to be deposited into the appropriate funds simply by allowing an approved entity to retain those amounts once collected, rather than turning them over to the State. As soon as an employer withholds state income tax from an employee’s paycheck, the amount withheld becomes gross proceeds of the state income tax. We cannot discern, without extensive survey, all the rules and regulations that may govern state income taxes and any charges that may be rightly deducted from such taxes. Therefore, we decline to attempt to define what constitutes “all net proceeds of [the state income] tax.” Nevertheless, we are clear to the conclusion that any attempt to bypass the provisions of § 211.02 by allowing an approved entity to retain a portion of the state income taxes withheld from employees would amount to an unconstitutional diversion of some net proceeds of the state income tax because, even allowing for any otherwise appropriate deductions from the state income taxes withheld, at a minimum, some portion of the percentage of such state income taxes that would be retained by an approved entity would constitute net proceeds of the state income tax.
Therefore, because it allows at least part of the net proceeds of state income taxes to be used for purposes other than those specifically provided in § 211.02 of the Alabama Constitution of 1901, S.B. 373 clearly violates § 211.02 of the Alabama Constitution of 1901. See Opinion of the Justices No. 351, 665 So.2d 1389, 1391 (Ala.1995) *859 (“[B]oth [questions] can be paraphrased as asking whether the revenue derived from the sources described in Amendment 354. [now § 111.06, Ala. Const. 1901 (Off.Re-comp.) ] can be appropriated for any purpose other than the purposes to which Amendment 354 limits the expenditure of those revenues. The answer to this question is obviously ‘no.’ To the extent that H.B. 234 appropriates moneys from the revenue sources described in Amendment 354 for purposes other than the purposes specified in that amendment, H.B. 234 violates Amendment 354.”); Opinion of the Justices No. 337, 613 So.2d 393, 396 (Ala. 1993) (“The tax here imposes a $.003 per gallon tax on all sellers of fuels passing through the first pump in the state; thus, the emphasis is on the fuel, not the pump. A fuel tax can be used only for the limited purposes set forth in Amendment 93, as amended by Amendment 354. Therefore, H.B. 445 would be unconstitutional because it would violate Amendment 93, as amended by Amendment 354.”); Opinion of the Justices No. ,324, 511 So.2d 505, 511 (Ala.1987) (“Our opinion is that H.B. 713, which imposes certain environmental protection fees upon motor fuels to be used to provide environmental protections for polluted groundwater, violates Amendment 93 to the Constitution of Alabama 1901, as amended by Amendment 354 of the Constitution of Aabama 1901[, which provides ‘that no moneys derived from any fees, excises, or license taxes levied by the state relating to fuels ... shall be expended for other than cost of administering such laws, statutory refunds ... cost of construction, reconstruction, maintenance and repair of public highways and bridges, costs of highway rights-of-way, payment of highway obligations, the cost of traffic regulation, and the expense of enforcing state traffic and motor vehicle laws’].”). Any attempt to use the proceeds of the state income tax in a manner other than that set forth in § 211.02 of the Aabama Constitution of 1901 would require a constitutional amendment adopted pursuant to the process set out in §§ 284 through 287 of the Aabama Constitution of 1901. See generally State v. Manley, 441 So.2d 864 (Aa.1983).

Answer

We answer question number 2 in the affirmative. Because we find that S.B. 373 violates § 211.02 of the Aabama Constitution of 1901, we need not address whether it violates §§ 211.01 and 212 of the Aa-bama Constitution of 1901, and we therefore respectfully decline to answer questions number 1 and 3.
Respectfully Submitted,
/s/ Sue Bell Cobb
Chief Justice
/s/ Thomas A. Woodall
/s/ Lyn Stuart
/s/ Michael F. Bolin
/s/ Tom Parker
/s/ Glenn Murdock
/s/ Greg Shaw
/s/ James Alen Main
/s/ A. Kelli Wise
Associate Justices

. Section 12-2-10, Ala.Code 1975, provides: "The Governor, by a request in writing, ... may obtain a written opinion of the justices of the Supreme Court of Alabama or a majority thereof on important constitutional questions.”

. You also requested our opinion on whether S.B. 373 violates any "other potentially applicable provisions of Alabama’s Constitution.” In Opinion of the Justices No. 382, 907 So.2d 1022, 1025 (Ala.2005), this Court explained:
"The Justices of the Supreme Court have consistently restricted advisory opinions to questions on the constitutionality of proposed legislation 'arising under a stated section or sections of the Constitution.’ Opinion of the Justices No. 219, 294 Ala. 604, 605, 320 So.2d 622, 623 (1975). Questions addressing whether proposed legislation violates any section of the Constitution are ‘too broad and indefinite' and responding to such questions would 'leave to the Justices the search for all possible avenues of constitutional tests, imposing] a task accompanied with such doubt and uncertainty that even those gifted with unusual ingenuity, would retreat from it.' Opinion of the Justices No. 199, 286 Ala. 156, 158, 238 So.2d 326, 327 (1970).”
See also Opinion of the Justices No. 370, 756 So.2d 21, 22 (Ala.1999) (“Since the adoption of the 1923 Act authorizing the Justices of this Court to give their opinions (the Act now codified as Ala.Code 1975, § 12-2-10), we have consistently declined to give advisory opinions on the general constitutionality of pending legislation. We have, instead, restricted our opinions to questions that raise the constitutionality of pending legislation *856 under specific provisions of the Alabama Constitution or the United States Constitution. See Opinion of the Justices, 373 So.2d 1050 (Ala.1979); Opinion of the Justices, 692 So.2d 106 (Ala.1997). Therefore, to the extent that your request seeks an advisory opinion on the general constitutionality of H.B. 1, we respectfully decline to answer it.”). Therefore, we respectfully decline to answer your request insofar as it asks this Court to review the constitutionality of S.B. 373 in light of "other potentially applicable provisions of Alabama's Constitution.”